FOUNTAIN LACKERY v. SQUIRE LACKERY ET AL.

**Execution—Validity of Judgment—Surrender of Property—Estate.**
> The execution of a replevin bond and the subsequent surrender of prop_
> erty to be sold under an execution issued on the replevin bond, operates
> to estop the party so doing and his vendee from claiming an interest in
> the land so surrendered.

**Attorneys Fee—Defeated Party.**
> The appellant being defeated in the action, was liable for legal cost.
> but beyond that he ought not to be made to contribute to the payment
> of the fees of his adversary's counsel.

*November 26, 1867.*

APPEAL FROM LOISVILLE CHANCERY COURT.

OPINION OF THE COURT BY JUDGE HARDIN:

Jeremiah Lackery died in 1851. He owned several hundred acres of land in Jefferson county, part of which he devised specifically by his will to his children; and two hundred acres of which he directed to be sold by his Exors., and the proceeds to be equally divided amongst all his children—of whom and their descendants, evidently intended to be embraced by the devise, there were ten in number, viz.: Archibald K., Samuel, Alfred, Caroline, Levi, Squire, Fountain and John Lackery, and the children of William Lackery and Hanna Long, deceased.

The executors having failed to sell the two hundred acres, as directed by the will, a suit was brought in 1859, by Fountain Lackery, praying a division of the land, instead of a sale, and claiming, in addition to his own share, as a devisee, to own other interests, by purchase, and among them the share of Levi Lackery; and he exhibits a deed between himself and Levi Lackery, dated the 18th day of July, 1859, purporting to convey said Levi's interest to him.

Archibald K. Lackery, being at that time dead, his infant, and only children, George Lackery and Alfred Lackery, were made defendants, and, though it does not appear that they were served with process, a guardian *ad litem* was appointed for them, who filed an answer in which the claim of Fountain Lackery to the

share of Levi is controverted, and it is claimed as having been purchased by Archibald K. Lackery at a sheriff's sale in 1853. It was the subject of further litigation in the chancery court ,and now is the principal matter of controversy on this appeal.

The cause was heard in May, 1861, and the court adjudged the share of Levi Lackery, in controversy, to belong to Fountain Lackery, and directed a division of the land. In March, 1863, another suit was brought by Squire Lackery and others against Fountain Lackery and others, in which said children of A. K. Lackery were united as plaintiffs, seeking to vacate the judgment and other proceedings in the former suit, for the reason, among others, that said George and Alfred Lackery were not legally before the court in the other case by service of process or otherwise. In the petition in this action the claim of A. K. Lackery's heirs to the interest of Levi Lackery in the 200 acres of land is not specifically asserted; but the petition refers to and adopts as part thereof the papers, pleadings and record of the other suit, by which it mainly appears that said claim is based on the following facts:

On the 21st day of April, 1833, Levi Lackery executed his prommissory note to Ira Westan for $70, the price of a lot in the town of Cloverport, in Breckinridge county. In 1836 Westan brought a suit in chancery to enforce his lien on the lot, and Levi Lackery being then a non-resident of Kentucky, he was proceeded against constructively by warning order, publication and traverse, but was not otherwise before the court.

A *nisi* decree was rendered in July, 1837, and a final decree for a sale of the lot to satisfy the debt was rendered in October, 1837. Fifty dollars was realized by a sale of the lot. An execution is copied in the record dated the 1st day of May, 1838, directed to the sheriff of Breckinridge county, purporting to be issued upon a judgment against Lackery for said debt of $70. It does not appear to have been delivered to any officer. A like execution was issued by the clerk of the Breckinridge circuit court, dated August 24, 1852, and credited by $50 as made by the sale of said lot, and directed to the sheriff of Jefferson county, by whom it was received. And this execution was on the 8th day of November, 1852, replevied in the hands of the sheriff by Levi Lackery as principal and Fountain Lackery as his surety, the replevin bond being for $75.43. Upon which bond an execution

was issued against Levi and Fountain Lackery, which, in March, 1853, was levied on Levi Lackery's interest in the land, with his consent, as appears from the following writing:

"Louisville, Ky., March 1st, 1853.

"I give up to S. S. Hamilton, D. S., of Jefferson county, my individual interest in land and negroes belonging to my deceased father's estate as a levy to satisfy execution No. 1554, which issued from the Breckinridge circuit court in favor of Isaiah Westan. Levi Lackery."

Under the levy so made, the sheriff sold Levi Lackery's said interest in the land on the 11th of April, 1853, and A. K. Lackery became the purchaser for $81.80, the amount of the execution.

In this cause the partition directed in the former suit was set aside and the land adjudged to be sold, and afterwards on exceptions filed by said George and Alfred Lackery to the report of a commissioner to ascertain the interests of the parties in the proceeds of the sale, said share and interest of Levi Lackery in the land or its proceeds was adjudged to belong to said heirs of A. K. Lackery. That judgment was subsequently set aside on the petition of Fountain Lackery for a rehearing, and afterwards re-entered as the final judgment of the court, from which Fountain Lackery prosecutes this appeal.

Whether the judgment in the Breckinridge circuit court was such as to authorize the issual of the execution thereon which was replevied by Levi Lackery and the appellant as his surety, we are of the opinion that the execution of the replevin bond and the subsequent surrender by Levi Lackery of his interest in the land, to be sold under the execution which was issued on the bond against him and the appellant, operated to estop both said Levi and the appellant as his vendee from asserting claim to the interest in the land so surrendered to and sold by the sheriff in opposition to the claim of A. K. Lackery or his heirs acquired by purchase at said sale, and it seems to us therefore that the chancellor properly adjudged the proceeds of said interst in the land to the children of A. K. Lackery, deceased. The objection that their claim is not so asserted in the petition as to authorize the judgment in their favor, being, as we think, untenable.

The judgment, which confirms the report of the commissioner of the several distributable shares in the proceeds of the land is

complained of, by the appellant, because by the commissioner's report the sum of $200 was deducted from the general fund for distribution and allowed as a fee to Messrs. Riley & Russell, the attorneys, for other parties than the appellant and in opposition to him. The appellant, being defeated in the action, was liable for legal costs, but beyond that he ought not to be made to contribute to the payment of the fees of his adversary's counsel, and to the extent that said allowance operates to diminish the share of the appellant in the fund to be distributed, the judgment is deemed erroneous, and for this reason must be reversed.

Wherefore, to the extent that the allowance to said attorneys affects the appellant's interest, the judgment is reversed, and the cause remanded for further proceedings in conformity with this opinion.

In all other respects, the judgment is affirmed.

*Barr,* for appellant.

*Riley,* for appellees.